[Civ. No. 23224.   Second Dist., Div. Two.   Dec. 10, 1958.]

VIRGINIA RUFF TROEGER et al., Appellants, v.
ARTHUR S. FINK et al., Respondents.

Andrew J. Copp, Jr., and H. Dexter McKay for Appellants.

Bromberg & Cravitz, Bennett J. Cravitz, C. S. Tinsman, Ames, McGee & Tumbleson and Glenn C. Ames for Respondents.

HERNDON, J.—Alleging an encroachment upon their unimproved property by one or the other, or both, of two commercial buildings which had been constructed respectively upon lots adjoining their property on opposite sides, plaintiffs sought damages, a mandatory injunction, and other equitable relief. Contrary to plaintiffs' allegations, the trial court found that neither of the two buildings encroached, and, in addition, held that plaintiffs' action was barred by limitations and laches. Plaintiffs have appealed from the judgment "... in so far as it is in favor of defendants and against plaintiffs. ..."

The real property involved in this action is situated in Block G of Encino Tract, a subdivision facing on Ventura Boulevard in the city of Los Angeles. Originally this subdivision was a part of a larger area designated as Tract 2955. In 1922 Encino Tract was surveyed and the map thereof was duly recorded.  ▮▮  All parties to this action received their interests in their respective lots by and through deeds, each of which incorporates said map by reference. Thus, in each instance, said map constitutes a part of the legal description of the land granted. (*Anderson* v. *Trotter*, 213 Cal. 414, 420 [2 P.2d 373]; see 15 Cal.Jur.2d 569, § 166.)

According to the map of Encino Tract there are 20 lots in block ''G'' which front on the north side of Ventura Boulevard between Genesta Avenue on the east and Amestoy Avenue on the west. The lots are numbered consecutively from east to west, Lot 1 being on Genesta and Lot 20 on Amestoy. Plaintiffs are the owners of Lots 15 and 16, which are interior lots, located somewhat westerly of the center of the block. Plaintiffs acquired these lots in January, 1949; said lots then were and still are unimproved. Lot 14, which adjoins plaintiffs' lots on the east, is owned by the defendants Witherow. The Witherows acquired Lot 14 in 1949 and in 1950 they constructed thereon a commercial building, hereinafter referred to as the Witherow Building. The east half of Lot 17 which adjoins plaintiffs' property on the west is owned by the defendants Fink. The Finks acquired their lot in July, 1954, from defendant Hay Corporation, the present owner of the beneficial interest under a deed of trust affecting the property. In 1945 a one-story commercial building was constructed on the easterly half of Lot 17 by one Samuel Garvin, who later conveyed the property to defendant Hay Corporation, which, in turn conveyed to the defendants Fink. This building will be referred to hereinafter as the Fink building.

The map of Encino Tract (by reference to which all four involved lots were described) indicates that plaintiffs' two lots should have a total frontage of 61.56 feet on Ventura Boulevard and a frontage of 62.34 feet on the alley to the north parelleling Ventura Boulevard. In 1955 plaintiffs employed F. William Pafford, a licensed surveyor, to make a survey of their lots. The map which Pafford prepared in connection with his 1955 survey indicated that the Fink building encroached upon plaintiffs' Lot 16 to the extent of approximately 3½ feet. Pafford's map and report indicated that the Witherow building was constructed entirely on Lot

14 and did not encroach on plaintiffs' property. The record reveals that in 1950 the Witherows had employed Pafford to survey Lot 14, and that the Witherow building was thereafter constructed in reliance upon Pafford's survey.

On August 20, 1956, plaintiffs filed the instant action joining as defendants all parties appearing to have any interest in the two lots adjoining their own on the east and west, respectively, and alleging that both the Fink building and the Witherow building were encroaching structures. Plaintiffs prayed for a declaratory judgment, a mandatory injunction to compel the removal of any encroaching structure and for a judgment quieting their title to Lots 15 and 16. During the course of trial, plaintiffs were allowed to amend their complaint to include a cause of action for damages for the alleged encroachment. All defendants answered, denying any encroachment and alleging the affirmative defenses of laches and the three-year statute of limitations (Code Civ. Proc., § 338, subd. 2).

There was a trial by the court sitting without a jury, and at the conclusion of plaintiffs' case the defendants severally moved for a nonsuit. At the suggestion of the trial judge, these motions were withdrawn, the defendants rested and the cause was submitted on the merits. Thereupon, the court ordered judgment in favor of defendants. The findings and judgment expressly declare: (1) that neither the Witherow building nor the Fink building encroaches on plaintiffs' property; (2) that each of said buildings ". . . is located and lies wholly and completely within the confines and boundaries . . .", respectively, of Lot 14 and the easterly half of Lot 17; (3) that ". . . all of said Witherow Building lies easterly of the common boundary line . . ." between the Witherow property and plaintiffs' property; and (4) that ". . . all of said Fink Building lies westerly of the common boundary line . . ." between the Fink property and plaintiffs' property. The judgment quiets plaintiffs' title to Lots 15 and 16. In the findings and judgment the four involved lots are described in the same manner that they are described in the deeds by which the parties acquired them, that is, by reference to the same map of the Encino Tract. In its conclusions of law, the court declared that except as to their cause of action to quiet title, plaintiffs' action was barred by laches and by the provisions of section 338, subdivision 2 of the Code of Civil Procedure.

Plaintiffs' contentions on this appeal are as follows: (1) that the findings are contrary to undisputed evidence insofar as they declare that neither of the buildings erected on adjoining lots encroaches on plaintiffs' property; (2) that certain of the findings are mutually inconsistent; (3) that the findings with respect to the non-existence of the alleged encroachments are inconsistent with the conclusion that plain· tiffs' action is barred by laches and limitations; and (4) that the trial court's conclusion that the action is barred by laches and limitations is erroneous as a matter of law. We shall discuss these contentions in their inverse order.

The facts bearing upon the application of the statute of limitations are clear and undisputed, and may be recapitulated very briefly. In 1945 Mr. Garvin erected the Fink building, a one-story commercial structure, on the easterly half of Lot 17. Thereafter, Garvin conveyed the property to defendant Hay Corporation, and in 1954 Hay Corporation conveyed it to the Finks. Plaintiffs acquired their Lots 15 and 16 in January, 1949. Later in 1949 the Witherows bought Lot 14 and in 1950 they constructed the Witherow building thereon. The instant action was filed in August of 1956, about *eleven years* after the construction of the Fink building, about *six years* after the construction of the Witherow building, and more than *seven years* after plaintiffs acquired Lots 15 and 16.

■ Under well settled California law plaintiffs' causes of action for damages and for an injunction to compel removal of the allegedly encroaching structures are barred by the provisions of section 338, subdivision 2 of the Code of Civil Procedure, which require that ''An action for trespass upon or injury to real property'' must be brought within three years after the accrual of the cause of action. Where one party so constructs a permanent building that it encroaches upon the land of another, the trespass is regarded as permanent in nature; causes of action for damages and for injunctive relief accrue when the trespass is committed and are barred three years thereafter. (*Rankin* v. *DeBare,* 205 Cal. 639, 641 [271 P. 1050] ; *Williams* v. *Southern Pacific R.R. Co.,* 150 Cal. 624, 626 [89 P. 599] ; *Tracy* v. *Ferrera,* 144 Cal.App.2d 827, 828 [301 P.2d 905] ; *Bertram* v. *Orlando,* 102 Cal.App.2d 506, 509 [227 P.2d 894, 24 A.L.R.2d 899] ; *cf. Fay Securities Co.* v. *Mortgage Guarantee Co.,* 37 Cal.App. 2d 637, 642 [100 P.2d 344].) The Fink and Witherow buildings, one-story frame and stucco commercial structures, obviously are ''permanent structures'' within the definition

suggested by the California cases. (*Bertram* v. *Orlando, supra,* 102 Cal.App.2d 506, 509; *Rankin* v. *DeBare, supra,* 205 Cal. 639, 641; *Tracy* v. *Ferrera, supra,* 144 Cal.App.2d 827, 828; *cf. Slater* v. *Shell Oil Co.,* 58 Cal.App.2d 864 [137 P.2d 713]; see *Spaulding* v. *Cameron,* 38 Cal.2d 265, 267-268 [239 P.2d 625].)

Relying upon *Kafka* v. *Bozio,* 191 Cal. 746 [218 P. 753, 29 A.L.R. 833], plaintiffs argue that the alleged encroachments of the buildings involved in the instant case should be regarded as unintentional and temporary invasions, constituting successive or continuing trespasses or nuisances and giving rise to new causes of action from day to day.

The identical contention has been expressly rejected in several decisions subsequent to *Kafka* v. *Bozio, supra.* In *Rankin* v. *DeBare, supra,* 205 Cal. 639, 641, the trial court awarded plaintiff damages upon a finding that defendant's two-story building encroached upon plaintiff's lot. The evidence proving the encroachment was undisputed, but it appeared that the action had been filed more than three years after the construction of the building. In reversing the judgment, the Supreme Court declared: ''There is no merit in the contention that the defendant's occupancy has been of such character as to vest in him title by adverse possession, but the contention that the plaintiff's cause of action is barred must be sustained. The record shows that the injury or trespass is permanent in character. Where the injury or trespass is of a permanent nature, all damages, past and prospective, are recoverable in one action, and the entire cause of action accrues when the injury is suffered or the trespass committed. (*Williams* v. *Southern Pacific R.R. Co.,* 150 Cal. 624 [89 P. 599]; *Kafka* v. *Bozio,* 191 Cal. 746 [29 A.L.R. 833, 218 P. 753].) The trespass was committed, according to the evidence and findings, on or about May 1, 1917. Three years expired on May 1, 1920, and as this action was not commenced until January 5, 1923, the cause of action was barred. Further, in view of the plaintiff's long delay in asserting his rights, the case is not one for a mandatory injunction to compel the defendant to remove his building from the said portion of plaintiff's land (see *Rothaermel* v. *Amerige,* 55 Cal.App. 273, 275 [203 P. 833]).''

Precisely the same contention as that made by plaintiffs here was rejected in *Bertram* v. *Orlando, supra,* 102 Cal.App. 2d 506. This decision quotes language from the decision in *Kafka* v. *Bozio, supra,* clearly indicating that said earlier decision treated the actionable wrong as an encroachment upon

the airspace above the plaintiff's land and not as an encroachment upon the surface of the land. In reversing a judgment which granted plaintiff a mandatory injunction and damages, the appellate court concluded at page 509: "We are satisfied that under the California cases herein cited the encroachment of a building obviously intended to be permanent upon the soil of another is a permanent trespass and that the cause of action based thereon is barred by Code of Civil Procedure, section 338, subdivision 2, in three years."

The holding in *Tracy* v. *Ferrera, supra,* 144 Cal.App.2d 827, 828, is indicated by the following quotation: "Appellants and respondents own homes on adjoining city lots. Appellants' first cause of action alleges that between April 1 and July 31, 1950, while appellants were absent, respondents erected walls, foundations, pipes and vents upon appellants' property. This cause of action clearly is in trespass. The original complaint was filed November 3, 1953. The demurrer specified Code of Civil Procedure, section 338, subdivision 2, as one of its grounds. That section fixes three years as the statute of limitations for such an action. Where encroachments of a permanent nature are erected upon one's land, the remedy is by an action in trespass for all damages suffered, past as well as prospective, and the entire cause of action accrues when the trespass occurs. (*Bertram* v. *Orlando,* 102 Cal.App.2d 506 [227 P.2d 894, 24 A.L.R.2d 899].) The demurrer upon the ground of the statute of limitations was therefore properly sustained as to the first count."

The above cited decisions demonstrate that the trial court properly regarded the allegedly encroaching buildings as permanent structures and correctly held that plaintiff's causes of action for damages and for injunctive relief were barred by the statute of limitations. Manifestly this holding renders moot all questions raised concerning the application of the equitable doctrine of laches. ■ Generally, the running of an applicable statute of limitations will also bar equitable relief. (2 Pomeroy, Equity Jurisprudence, 174, § 419b (5th ed. 1941); 18 Cal.Jur.2d 208-209, § 39.) As stated in *Trail* v. *Firth,* 186 Cal. 68, 69-70 [198 P. 1033]: "Laches or no laches, an action not brought within the statutory period is barred, unless the case falls within some exception which the statute itself makes, or because of waiver or estoppel it is not open to the defendant to make the defense." (See 18 Cal.Jur.2d 208, § 39.)

Plaintiffs cannot rightfully assert that they were denied any

declaratory relief to which they were entitled. ■ In the first place, the instant judgment adjudicates all issues which possess any practical significance (see *Fay* v. *Mortgage Guarantee Co., supra,* 37 Cal.App.2d 637, 640). ■ In the second place, it is settled that where the statute of limitations has barred any right to "coercive" relief, declaratory relief designed to vindicate the same asserted right is likewise barred. (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, 734 [146 P.2d 673, 151 A.L.R. 1062]; *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 462-463 [326 P.2d 484].)

■ We find no merit in plaintiffs' contention that the trial court's conclusion that the action was barred by limitations is inconsistent with its findings that no encroachment actually existed. We fail to see any logical inconsistency in a declaration that an alleged encroachment does not actually exist, but, assuming, for the sake of argument, that it *does* exist, any cause of action arising therefrom is necessarily barred by limitations. (See *Iacovitti* v. *Fardin,* 127 Cal.App.2d 348, 355, 356 [273 P.2d 926].)

Our holding with reference to the defense of limitations also renders it unnecessary for us to indulge in a lengthy and detailed review of the evidence to demonstrate the existence of substantial support for the trial court's findings to the effect that neither of defendants' buildings encroached upon plaintiffs' land. Accordingly, we shall summarize the evidence as briefly as possible:

Plaintiffs rely very largely upon the testimony of the witnesses Pafford and Naffie, both licensed surveyors. Naffie testified that in the course of a survey made by him in 1927 he discovered a 2-inch iron pipe which he believed to be an original monument set in 1922 by the surveyor who made the controlling survey of Encino Tract. From its relationship to other discovered monuments and to the lines of adjacent streets, Naffie concluded that this monument must have been set to mark the southeast corner of Block G. Both Naffie and Pafford agreed that this location of the southeast corner of Block G placed it 3.9 feet west of its correct location in relation to the center lines and curb lines of dedicated streets established by the earlier survey of Tract 2955 and the recorded map thereof.

According to the theories of Naffie and Pafford, this erroneous placing of the corner by the original surveyor of the Encino Tract resulted in "swinging" Block G to the west so

that the actual distance between the westerly curb line of Genesta and the easterly curb line of Amestoy was reduced to the extent of about 3½ feet less than the total of the frontages of Lots 1 to 20 as recited in the map of Encino Tract. Acceptance of this theory would seem to mean that if Lot 20 were given the Ventura frontage called for in the Encino Tract map, the lot would have to extend some 3½ feet into Amestoy Avenue.

Obviously the validity of the theory adopted by plaintiffs' witnesses depended upon the correctness of their conclusion that the monument which they took as their starting point was set by the surveyor who made the controlling survey in 1922, and that it was used by him as the starting point of his survey. Admittedly, this conclusion was but a deduction from conflicting data. It was by no means conclusively established that the monument referred to was in fact the one utilized by the original surveyor. Furthermore, in certain respects, Pafford's testimony appears to be unclear and inconsistent. He testified that the buildings constructed on Lots 18, 19 and 20 did not encroach on the adjacent lots easterly despite the fact that according to his theory Lot 20 had lost ground as a result of the erroneous survey. The effect of Mr. Pafford's testimony was that the Fink building was the encroaching structure, and that the Witherow building, which had been located in reliance upon his 1950 survey, did not encroach on plaintiffs' lot.

Although plaintiffs' witness Roy Troeger testified that after he saw the map of Pafford's 1955 survey, he ''stepped the distance off'' in measuring the distance between the Fink and Witherow buildings and found a shortage, he apparently did not make any accurate measurement. And although certain of plaintiffs' documentary exhibits indicate an encroachment by the Fink building, these exhibits do not conclusively establish that the actual distance between the two buildings is less than 61.56 feet called for by the Encino Tract map.

A copy of a recorded survey made in 1955 by E. Chris Gutier, a licensed surveyor, which was introduced into evidence as plaintiffs' Exhibit 3, indicates that the Fink building does not encroach on plaintiffs' land. Furthermore, Mr. Garvin testified that in 1945 he had a survey made of the easterly half of Lot 17 immediately before he started construction of the Fink building. This survey was made by John W. Beatty, a licensed surveyor, and the plat of that survey was placed in evidence by plaintiffs' counsel. Mr.

Garvin testified that he personally supervised the construction of the Fink building and saw to it that the building was located westerly of the boundary between Lots 16 and 17 as established by the Beatty survey.

██ In fulfilling its traditional function, the trier of the facts was not bound to accept the testimony or the theories of plaintiffs' expert witnesses as against other substantial evidence. It could have rejected Pafford's theory as to the existence of the encroachment in the light of the witness' interest in sustaining the accuracy of his 1950 survey and his admission that other surveyors might reach conclusions different from his own. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521].) ██ The existence or nonexistence of an alleged encroachment across boundary lines is generally a question for the trial court to resolve, (*cf. Iacovitti* v. *Fardin, supra,* 127 Cal.App.2d 348, 355; *Fay Securities Co.* v. *Mortgage Guarantee Co., supra,* 37 Cal.App.2d 637, 641; *Phillips* v. *Hooper,* 43 Cal.App.2d 467, 469 [111 P.2d 22]) and the burden was on the plaintiffs to establish the encroachment alleged in their complaint.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 4, 1959.